Good morning, Your Honors. Randy Olin for Keith Holder. I'd like to reserve two minutes, please. You may. Your Honors, this case presents yet another issue pertaining to statutory eligibility for a Section 212C waiver of deportability, this time in light of the United States Supreme Court's seminal decision in Bar-Taylor v. Holder, which held that detrimental reliance plays no part in the retroactivity analysis as to the impermissible retroactivity. Well, it says it's not an essential requirement, but it doesn't say that it plays no part, does it? Actually, I believe it does, Your Honor. I think the warders get a little money because, first, they say that it's not a part of the analysis, and then they talk about how reliance has always been a consideration in finding that. But what I think that the Court meant in doing that is to say that it's imputed. They impute a reliance interest to all members of the class. Tassios v. Reno, I think, was the first case that held that the Court had done that with respect to Edpert and Eryra. So, to answer your question, it does not play a role. The discussion afterward just animates the principle that reliance is imputed, whether it's there or not, to all persons. Your Honor, I've got a more fundamental question. I did not understand your reading of Bererio. It seems to me that Bererio decides this exact case. We could argue about whether Bererio remains good law in light of Landvest and St. Cyr and Varnles, but it decides this case. And the circuit more recently in Gomes recognized that it decided this case. Other district courts in the circuit have recognized that it decides this case. Other courts of appeals that have considered it recognize that it decides this case. Doesn't it decide this case if it remains good law? No, is the short answer. I will say so. First of all, let me just say, Your Honor, that in my brief I spent probably far too much time trying to say that this Court should reexamine Bererio in the face of its obvious deficiency with respect to a clear statement of temporal scope. In Bererio, the Court said that with respect to Congress's statement of the temporal scope, that because it had amended a different part of M.A.C. 90, that it was just an oversight. Right. The Court made it. We can disagree about that. But where one panel, Judge Aldridge and the other judges on that panel, decided to say that the fact that it was included in 513 and not included in 511 indicates that it was a mere oversight in 511. Now, you can make a different argument, but a panel of this Court has already decided that. Unless you can distinguish it, that issue is done, isn't it? To the extent that one panel cannot overrule another panel, Your Honor, but if this case were to proceed raising the issue here, if this case were to go forward to the next level, we would be entitled to argue that Bererio was wrongly decided. But more to the point, Your Honor. And the reason why I think most of what I wrote in my brief regarding reviewing Bererio in that holding is that it's kind of academic because, let me just say, in Toya v. Fasana, 2003, the Ninth Circuit conducted that analysis and said that the Congress had not spoken with the requisite clarity with respect to temporal scope, proceeded to Step 2 of the UNRAF analysis, and found that it was impermissibly retroactive. Well, Toya is distinguishable because in this case, in Toya, the plea was before IMAX effective date, and it was a plea. Here, it was a conviction. The conviction was after IMAX effective date, so even if Toya was a law in this circuit, it wouldn't dictate the result that you're seeking here. But here's the important point. The agency adopted the Toya principle, and to this day, that is their principle. That's true, but its regulation is limited only to pleas, and only to pleas that are entered before IMAX effective date. So the facts of your case wouldn't produce that result even under the Homeland Security's regulation. But that's why Bartelos changes the analysis. Okay, so that's, I think, a legitimate argument. Barrera is no longer good law in light of Landgraf, St. Cyr, and Bartelos, but in Gomes, the First Circuit said that Barrera was still the law, and that was after Landgraf and St. Cyr. It was before Bartelos. So I think you've got a pretty big uphill-rowing decline here in explaining that that's no longer good law. With respect to that, and for the purposes of revisiting Barrera and Gomes, which, by the way, just merely adopted Barrera without really any independent assessment of the temporal scope issue, we can rely on my brief. The more important point is that the agency has adopted the principle. As we stand here today, the regulations state that 511 cannot be applied to pre-enactment convictions. Now, Bartelos' pre-enactment pleas, and that it was extended to pre-enactment convictions, but your case is a post-enactment conviction. So that's where Bartelos becomes important. Bartelos is a sea change in the retroactivity analysis. Bartelos said, number one, that reliance is not a part of the retroactivity analysis, and therefore individuals whose convictions were obtained after trial are in the same footing as individuals whose convictions were obtained after pleas. While this was going on, Your Honor, in a parallel litigation, the entire structure of 212C was being challenged based on the comparable grounds theory. I assume the Court's familiarity with that. Prior to up to that time, in order to receive a, be eligible for a 212C waiver of the ground of deportability, there had to be a corresponding ground of inadmissibility.  In 2011, the Supreme Court decided Juulang v. Holden, and through that, defenestrated the entire structure of 212C, finding that to be arbitrary and capricious, and instructing the Board of Immigration Appeals to come up with, directing them to come up with a 212C framework that makes sense. Now, then Bartelos came out. And then in response to Juulang, the Board of Immigration Appeals issued its Matter of Apfelgani decision. In Matter of Apfelgani, they recognized that given Bartelos, given St. Cyr, that the conditions pursuant to trials were now in the same footing as convictions after pleas. But they were focused on convictions rather than underlying criminal conduct. I'm sorry, but I'm really getting there. In Apfelgani, the Board stated, IJs nationwide should now treat deportable permanent residents convicted after trial no differently than those who are convicted by means of plea agreements.  HCFR 1212.3F4II is a regulation that applies today, and it states that an alien remains eligible for 212C relief even if he has an aggravated felony conviction for which he's served five years, as long as he entered into a plea agreement prior to him acting there. Now, the really important part of that is that for purposes of those who enter into a plea, it's not the conviction that's the relevant date. The relevant point is when the person decides to enter into a plea agreement. So this is where we stand today. But that's the point where he alters his legal rights. I'm sorry? That's the point where his legal rights are altered. Yes. Your guys' legal rights aren't altered until the conviction. I'm sorry? Until the conviction, which is post the enactment. Well, for purposes of 212C eligibility, the focal point is when you enter the plea agreement. It's not the conviction. Let me explain by showing what the structure of the regulations now, things stand now. Keith Holder commits his offense in May of 1990. Non-citizen B commits the same offense on the exact same day. A few weeks before enactment is enacteded, alien B, non-citizen B, decides that he's going to enter into a plea agreement. On that exact same day, Mr. Holder decides that he's going to go to trial. A couple of weeks later, enactment is enacted. Excuse me. Both convictions enter on December 24th, a few weeks after enactment is enacteded, Mr. Holder's by the verdict and the other non-citizens by a change of plea. Mr. Holder is not eligible. Their situations are exactly the same. Everything is the same. You couldn't be more similarly situated. Mr. Holder is not eligible for 212C. Non-citizen B is eligible for 212C, and the only difference between them is that Mr. Holder decided to go to trial. That is precisely what Aptel, Downey, and Voltaire say you can't have. They have to be treated the same. You want us to basically say that the event or act to which record activity analysis applies is the offense, the commission of the offense. I don't think we have to upset the entire act of retroactivity jurisprudence. All we need to do is draw a different line, and perhaps it should be the inception of the trial. The line doesn't have to be. If it's not the offense, how do you prevail? I think the only point that makes sense is the content. That's a finite point that everybody can identify. And beyond that, Voltaire speaks of, in Voltaire's decision, they speak of conduct over and over and over again. The problem is they don't speak of conduct when they get to saying what their judgment is at the end of the case. I understand that, but I think it's informative that they do discuss conduct. So what we've got is we've got, Landgraf actually seems to help you more in some ways than Vartelis, but we've got two, because it talks about civil offenses, and the civil law is changing, and yet you go back to the conduct. But we've got two post-Landgraf decisions that specifically reject offense. Then you've got Vartelis, and you want us to say that Vartelis implicitly overrules those or should call those into question. The Second Circuit has, as I understand it, rejected precisely that argument, that Vartelis should be read as signaling that the date of offense is the correct time. As of today, I believe that's the only case that meets the circuit court on this issue, but I would point out that that's the Centurion case. So to rule for you, we need to say that two of our prior cases have now been sufficiently cast into doubt by Vartelis that we are no longer bound by them, and then we proceed and create a circuit conflict. Are you referring to Barrera and Gomes? Yes. Well, I'm referring to Cruz Buscelli and Lawrence v. Gonzalez. Both of those cases are pre-Vartelis? Right. And both of them depend on reliance. They both speak of the reliance as being a part of the analysis. Vartelis clearly overrules them. You know, making the conduct the focal point, the point at which we draw the line, is the most sensible place to do it. In other contexts, I would say that the Young case, there are others that would say that you can't What do you do with on-or-abouts? On-or-abouts indictments? Well, I understand that. I think you use the on-or-about key. And even with conspiracies, I mean, a conspiracy charge can give a particular range of conduct. Is it the beginning or the end we use? That's a good question, Your Honor. I haven't decided that. We'll wait to see what your next case presents.  I understand. May it please the Court, I'm Christina Greer on behalf of the United States Attorney General Loretta Lynch. The agency properly denied Holder's application for 212C relief. It's established that he was convicted of an aggravated felony for which he served more than five years in prison, which bars him under the language of INA 212C in effect at the time of both his conviction and his application for relief, as reflected in the regulation at 8 CFR 1212.3F. Can you reconcile your regulation with our precedent? An application, say, for example, where someone pleads guilty before IMAX effective date, under your regulation, they would be entitled to a waiver authority, whereas under the First Circuit's precedent, they would not, it seems to me. Can you help me understand how we put those things together? Well, the regulation is not necessarily in contrast to First Circuit case law. It does allow for broader application of the waiver, because it was changed to take into account the First Circuit's precedent. To address TOIA. You don't agree with TOIA, but you adopted it to have a uniform approach. Correct. But the approach, uniform approach you adopted, would be inconsistent with the First Circuit's precedent in cases, at least in which someone pleads guilty or has been extended in Abergani to convicted prior to IMAX effective date. Those people would be under your regulation entitled to a waiver, but they would not be under First Circuit precedent because their application post-dates IMAX effective date. Do you see how that's so? I do. And how do we reconcile that with your regulation, which we would be today, I think, required ordinarily to give some degree of deference to, wouldn't we? I believe that one response to that question is that because that regulation is there, that case will never come up to the court. So there will never be... And this is not that case, so we don't have to worry about it. Correct. Okay. Because here, his conviction was after the IMAX effective date of November 29, 1990. So that isn't this case. So while it may appear to be inconsistent, that case will never make it to this court. But as to the board here applying IMAX 90's aggravated felony waiver, in this case, its application of that waiver was not impermissibly retroactive, which is what Holder's arguing. Under the two prongs of... And the government argues that that's because under both prongs of the retroactivity analysis, the government's argument prevails. The first prong asks whether Congress has specifically prescribed the statute to proper reach. And we believe that it does. First, 511B specifically states that it applies to all admissions after November 29, 1990. And the board and circuit courts, including this court in Gomez, have unanimously interpreted the word admission in 511B to mean all applications for 212C made after that effective date. And second, the language of 511B, which prescribes the temporal scope of 511A, the aggravated felony bar, follows the suggested language that the Supreme Court put forth in Landgraf. So are you presenting a sort of Landgraf step one or step two argument here? Are you telling us that Congress has specifically answered the question before us and it should be conviction? Or are you saying Congress did not speak with sufficient clarity to resolve the retroactivity issue, therefore we presume it is not retroactive, and in an exercise effectively of our common law jurisprudence, we then need to fix how far back it goes as a matter of fundamental fairness? Our argument is that under both prongs. Well, first off, that Congress did speak clearly. But even if the court decides that Congress didn't speak clearly, then... Okay, and how precisely did Congress, because the Supreme Court, it's hard to find a case where they say Congress spoke with sufficient clarity where Congress actually didn't use the word retroactive. In fact, I'm not sure I can think of one. I don't know of one either. And what language here would you say the Supreme Court would tell us that Congress itself resolved this issue before us today? Well, 511B states that the amendment made by Section A shall apply to admissions occurring after the date of the enactment of this act. That language... But if you go with that, that would include, if that's the language you're relying on, then as long as the admission application is after the effective date, it applies, and yet not even you are advocating that. So that language, therefore, couldn't be the language that gives us the direction that we need to resolve this case. And that's where this argument becomes a little muddled, to be completely honest, because while it does... But a little muddled under Landgraf and Barteles equals Congress hasn't spoken. Yes, but the reason that it's muddled is because of the Ninth Circuit's decision in TOIA. And your decision to adopt a regulation that embodies and endorses the TOIA decision. You didn't have an obligation to do that. Correct. However, the Ninth Circuit is a very large circuit, and having one consideration when creating regulations is to make the law more easily applicable throughout the country. But it makes it awfully hard for you to say that 511B is unequivocal and applies only to admissions after that date, regardless of the date of conviction or plea, when your own regulation doesn't adopt that position. It does to some extent. But here we're... It's interesting because here we're talking about the purpose of this act was to take away from the executive a power it had, the waiver power, under the prior statute. And I don't see how you can tell us that the language Congress used is so clear that we know it applies only to admissions made after the effective date of the statute. And yet you, in your discretion, are going to assume more power that Congress didn't give you. You're going to assume precisely the power. So if you're going to go the route that this is a discretionary acquiescence to the Ninth Circuit decision, you're literally saying you have the acquiescence power to exercise a power. Now you want to tell us Congress specifically prohibited you from exercising. For the purposes of Landgraf. Yes, for the purposes of Landgraf analysis. And that is why if the court does decide that Congress did not speak clearly under Step 1, under Step 2 we'd also argue that the statute does not have an impermissibly retroactive effect. So if we're at Step 2, we've then put Congress's, there's no mandate from Congress that answers this. We're now trying to do what's fair under a standard not guided by Congress retroactivity analysis. And we look at Landgraf, and Landgraf talks about some civil cases where it uses the date of the activity that gave rise to the potential civil liability. We have language in Vartelis that although the holding isn't perfect, they refer it to the offense. Just why, sort of from a general fairness position, since that's what we're supposed to be doing here under Prompt 2, wouldn't we pick the date that the person engages in the activity that now they later find out may have ramifications that it didn't at that time? I have two responses to that. The first is that in immigration proceedings the focus is on the conviction, not even what offense was committed. When it comes to determining whether an offense is an aggravated felony, the immigration court does not look to what happened at the offense. It is entirely focused on the conviction, and it can't go beyond that. So the question, that's what actually gives rise to the aggravated felony bar is the conviction. If somebody pleads to a different offense, they may be able to avoid the aggravated felony bar. There's not as much of a relation between the actual offense and being found removable or ineligible for having committed an aggravated felony or been convicted of an aggravated felony as there is between the conviction and whether one is ineligible as an aggravated felon. That's my first response. And the second is that the Supreme Court has consistently looked to the conviction as the point at which 212C relief or to decide which statutory scheme applies for 212C relief. Well, they've consistently said that as between the conviction and something later, we go for the conviction. Correct. But they have not consistently or ever said that as between the conviction and the date of the offense, we go for the conviction. That is correct. But every court that has considered the retroactivity of 212C provisions has looked to a conviction or plea, and I found none where the court looked to the offense. And additionally, as was suggested, there's a difficulty when looking to the date of the offense as oftentimes offense dates are given in ranges, even if it was one instance that could only have happened on one specific day, there may be a date range. Also, when it comes to solicitation offenses or conspiracies, there's often a date range given. It's not a specific date. So if the date range is both pre and post one of these enactments, it would be very, very difficult for immigration courts to deal with that. And especially then, the courts would be going into a factual analysis, which is what the immigration court is specifically prevented from doing by applying categorical and modified categorical analyses when determining whether a conviction is for an aggravated felony or another type of crime. Are there any other cases that you're aware of that are percolating up to other circuits right now on this issue? Not that I know of, because it is a very old issue, and that's part of the reason why the case law on this is fairly old and pre- and post-Landgraf. And then when I say this issue, I also mean it's comparable iteration under ADEPA or IREA? Yes, not to my knowledge. And so, and as to Vardalos, we maintain that while Vardalos does discuss the commission of the offense, that's only because of the unique language in 1101A13C, because there it's the statute states when it does focus on the commission of the offense in that statute, which is different than this statute, which focuses on the date of the conviction as being the triggering point. So Vardalos in, or the Supreme Court in Vardalos discusses the actual offense state and the commission of the offense. But as was mentioned, the court actually treated the conviction as the relevant past event, even though that language mentions commission. And therefore, if there are no longer questions, I would like to briefly conclude. In conclusion, the application of the aggravated felony bar enacted in Section 511 of MACT was not impermissibly retroactive as applied to holders post-November 29, 1990 conviction and application for 212C relief. The government therefore respectfully requests that the court deny this petition for review. Thank you. Thank you. Kind of as an aside, let me just say that what Congress should have said is that this 511 applies to admissions after the date of enactment, and because convictions are inextricably linked to that, it applies to convictions before, on, or after the date of enactment. It does that all the time. It did it in other sections of MACT 90. That would have resolved the issue. That would have been a clear statement of Congress. They didn't do that. What I did not hear my sister say, address at all, was the inequitable situation that currently exists because of the regulations that they are governing by. I don't think we have to deal with Barrera or argue that we need to overrule it. What we need to look at is the policy and the regulations that exist now that are causing two similarly situated aliens to be eligible or ineligible for a true trustee based solely on whether they went to trial. That cannot stand. If the government, if the agency is going to have a policy, it has to be a policy that comports with principles of due process, especially equal protection. Are you really then arguing that what we should be doing is criticizing the agency for adopting regulations and construing those regulations in Aberdeen to say a plea on one hand and a conviction on the other is unjust because it punishes people who try to go to trial, so we should invalidate the regulation? No, I don't even think we need to criticize it, Your Honor. All we need to do is fix it. We need to find a different triggering point at which the retroactivity analysis holds. And my sister just said that the conviction is the triggering point. The conviction is not the triggering point. It's the time at which you agree to enter into a plea agreement. And that is extremely critical to this. May I make one further comment to address Judge Paiola's question? Yes. Thank you, Your Honor. I don't know if, Your Honor, if I answered your question when I was up here before, but the Centurion decision, the one decision that has come down since dealing with this issue, as far as I can see, the issues that we are raising here were not raised in Centurion. Centurion seems to have been decided solely on the basis of the language in Bar-Taylor's that talked about emphasized conduct. The issue that I'm presenting here, the unfairness and the inequity in the way that the regulation, what the regulation does, was not raised in Centurion. Thank you.